# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| Eugene Jerome Cunningham, | ) |
| Plaintiff, | ) Case No 9:16-cv-1292-RMG |
| v. | ) |
| Jefferson B. Sessions III; Thomas R. Kane; Dr. Deborah G. Schult; Dr. Ivan Negron; Lieutenant Canada; Dr. J. Onuoha; Harris Hansen; Travis Bragg; and Helen J. Marberry, | ) **ORDER AND OPINION** |
| Defendants. | ) |

Plaintiff, an inmate with the Federal Bureau of Prisons ("BOP") assigned to the Federal Correctional Facility in Bennettsville, South Carolina, brought this action *pro se* seeking monetary, declaratory and injunctive relief. He alleges that Defendants have violated his right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution. Specifically, Plaintiff alleges that he has been diagnosed since 2007 with chronic Hepatitis C, a serious medical condition, and Defendants have refused to provide him curative treatment through the administration of a new generation of direct acting antiviral ("DAA") drugs such as Harvoni. (Dkt. No. 1). Defendants have moved to dismiss Plaintiff's action on a variety of substantive and procedural grounds, arguing, *inter alia*, that Plaintiff's complaint fails to state a claim under the Eighth Amendment. (Dkt. No. 31). As set forth below, the Court grants Defendants' motion to dismiss all claims for monetary damages, grants Defendants Negron's and Canada's motion to dismiss, and denies the motion to dismiss the claims for declaratory and injunctive relief against all other Defendants.

-1-

## I. Factual Background

Plaintiff alleges that he was diagnosed with chronic Hepatitis C in 2007 and subsequently became aware that a new generation of DAA drugs had been approved by the United States Food and Drug Administration ("FDA") which provided for the first time a cure for Hepatitis C. (Dkt. No. 1 at 5). Plaintiff alleges that he requested that Defendants provide him treatment with this new curative drug and BOP officials have refused to grant his request. (*Id.*). He further alleges that Defendants have informed him that until his condition develops into advanced cirrhosis of the liver or liver cancer he will not be administered the curative drug. (*Id.* at 6). Plaintiff alleges that he is suffering harm as a result of Defendants' deliberate and knowing decision to deny him curative treatment for his serious and chronic medical condition until a time in which there will be no effective cure. (*Id.*). Plaintiff further alleges that his chronic Hepatitis C infection causes him to suffer "headaches, fatigue, abdominal, joint pain, mental and emotional tur[moil], depression, anxiety, and stress." (Dkt. No. 21 at 2).

The Centers for Disease Control and Prevention ("CDC") has recognized that chronic Hepatitis C is a serious medical condition which can result in long term health problems, including cirrhosis of the liver, liver cancer, and death[1]. There was no known cure for chronic Hepatitis C until very recently, and the therapies previously available produced inconsistent results and severe side effects. Since 2011, the FDA has approved new generation of DAA drugs which have proven to be highly effective in the treatment and cure of Hepatitis C with minimal side effects.

In response to the proven effectiveness of DAA drugs in curing Hepatitis C, two prominent professional associations of physicians specializing in the treatment of liver disease,

---

[1] https://www.cdc.gov/hepatitis/hcv/index.htm.

the American Association for the Study of Liver Disease ("AASLD") and the Infectious Diseases Society of America ("IDSA"), issued new joint recommendations for the treatment of chronic Hepatitis C in June 2016. The joint recommendation recognized that the new DAA drugs provided a "virologic cure" for chronic Hepatitis C and recommended that DAA drugs be administered to "all patients with chronic [Hepatitis C] infection" except those with short life expectancies in which transplantation or other direct treatment was not available. It was also noted that delays in treatment of Hepatitis C with DAA drugs reduced the effectiveness of the drugs[2]. These joint recommendations of the ASSLD and IDSA were subsequently endorsed by the CDC as an "evidence based, expert-developed recommendations for hepatitis C management."[3]

Plaintiff initially brought this case as a *Bivens*[4] action seeking monetary damages and money to pay for Harvoni. (Dkt. No. 1). He later filed supplemental pleadings setting forth in greater detail his injuries from the delay in the provision of DAA drugs and seeking declaratory and injunctive relief. (Dkt. Nos. 21, 28).

Plaintiff has named as party defendants three individuals who he alleges are directly responsible for failing to deliver him the requested medical care to him at FCI Bennettsville:

1.  Dr. J. Onuoha, the Clinical Director at FCI Bennettsville;

---

[2] http://www.hvcguidelines.org.

[3] https://www.cdc.gov/hepatitis/hvc/hcvfaq.htm.

[4] In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983. However, federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of state law. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814-820 (1982). *Harlow* and progeny indicate that case law involving § 1983 claims is applicable in *Bivens* actions and vice versa. *Farmer v. Brennan*, 511 U.S. 825 (1994); *see also Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Turner v. Dammon*, 848 F.2d 440, 443-444 (4th Cir. 1988); *Osabutey v. Welch*, 857 F.2d 220, 221-223 (4th Cir. 1988); and *Tarantino v. Baker*, 825 F.2d 772, 773-775 (4th Cir. 1987).

2. Harris Hansen, a physician's assistant at FCI Bennettsville; and

3. Lieutenant Canada, formerly the Health Services Administrator at FCI Bennettsville.

Plaintiff has named the following officials as party defendants in their administrative capacities because he alleges that the BOP has instituted a policy which withholds a cure for the treatment of his chronic Hepatitis C:

1. Loretta Lynch, former Attorney General of the United States;

2. Travis Bragg, Warden at FCI Bennettsville;

3. Thomas R. Kane, Acting Director of the BOP;

4. Deborah G. Schult, Assistant Director of the Health Services Division for the BOP;

5. Dr. Ivan Negron, the former (now retired) Regional Medical Director for the Southeast Regional Office in Atlanta, Georgia; and

6. Helen J. Marberry, Regional Director of the Southeast Region for the BOP.

## II. Legal Standard

### a. Motion to Dismiss – 12(b)(6)

On a motion to dismiss under Rule 12(b)(6), a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) . . . [a court] must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir.

2009) (quoting *Twombly*, 550 U.S. at 555). "In considering a motion to dismiss, [the court] accept[s] the complainant's well-pleaded allegations as true and view[s] the complaint in the light most favorable to the non-moving party." *Stansbury v. McDonald's Corp.*, 36 F. App'x 98, 98-99 (4th Cir. 2002) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993)).

The Court is also charged with liberally construing a complaint filed by a *pro se* litigant to allow for the development of a potentially meritorious case. *Haines v. Kerner*, 404 U.S. 519 (1972). Even so, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

### b. Eighth Amendment – Deliberate Indifference

The Eighth Amendment to the United States Constitution, which prohibits cruel and unusual punishment, extends to "the treatment a prisoner receives in prison and the conditions under which he is confined." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Under the Eighth Amendment, prison officials have a duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks and citation omitted).

In *Farmer*, the Supreme Court articulated a two-part test that federal courts use to determine whether prison officials have subjected an inmate to unconstitutional conditions of confinement. The first part of the *Farmer* test is objective; it requires district courts to consider whether the deprivation Plaintiff alleges is "sufficiently serious." To be "sufficiently serious,"

the alleged deprivation must pose "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citation omitted). A prisoner seeking to challenge deprivation with regard to a medical need must demonstrate an official's deliberate indifference to a serious medical need that has been "diagnosed by a physician as mandating treatment" or that is so obvious that a layperson would "recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

The second part of the *Farmer* test is subjective; it requires a plaintiff to show that the prison officials acted with a culpable state of mind, in this case, with deliberate indifference. Plaintiffs alleging deliberate indifference to a serious medical need must show that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and. . . dr[ew] th[at] inference." *Farmer* at 837. A plaintiff must show the official's "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by [the official's] action or inaction." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (citing *Farmer* at 837–39). A plaintiff can meet the subjective knowledge requirement by providing direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer* at 842).

Deliberate indifference is not negligence. Rather, an official exhibits deliberate indifference to a serious medical need when he or she acts or fails to act "for the very purpose of causing harm or with knowledge that harm will result." *Farmer* at 834-35. Mere disagreement

about the appropriate treatment course among options which fall within the standards of care cannot support a deliberate indifference claim under the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

## III. Discussion

### a. *Bivens* Claims

#### i. Personal Jurisdiction

Plaintiff has thus far proceeded *pro se* so has not had the benefit of counsel to present arguments in response to Defendants' motion to dismiss for lack of personal jurisdiction over Defendants Kane[5], Schult, Marberry, and Negron. To conserve judicial resources, the Court assumes personal jurisdiction over these Defendants for the purpose of dismissing Plaintiff's *Bivens* claims against them on the ground of qualified immunity.

#### ii. Qualified Immunity

Under the doctrine of qualified immunity, officials may be shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights. Government officials do not enjoy qualified immunity if, based on controlling precedent or "a robust consensus of cases of persuasive authority," *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (quoting *Wilson v. Layne*, 526 U.S. 603, 617, (1999)), "it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted," *Saucier v. Katz*, 533 U.S. 194, 201-02, (2001).

In light of the rapidly evolving legal and medical developments in this area and the absence of any controlling Fourth Circuit or Supreme Court authority on the legal issue before

---

[5] The Court issued summonses to Defendant Kane and other BOP Defendants on July 26, 2016. (Dkt. No. 18.) The summonses were returned executed for BOP Defendants Bragg, Canada, Hansen, and Onuoha, but not for Defendant Kane. (Dkt. No. 26.) Finding that Defendant Kane, as director of the BOP, had actual notice of Plaintiff's *Bivens* claims, this Court deems service effective as to Defendant Kane.

the Court, there is no clearly established statutory or constitutional right *at this time* for inmates with chronic Hepatitis C to be treated with DAA drugs. Consequently, Defendants in this action are entitled to qualified immunity from any damage claims arising from the denial of DAA drugs to inmates. For this reason, Plaintiff's *Bivens* claims against all Defendants are dismissed.

### b. Claims for Injunctive and Declaratory Relief[6]

Plaintiff is seeking injunctive and declaratory relief on his claim that the BOP's refusal to provide him with curative treatment for Hepatitis C (Harvoni or presumably another DAA drugs), constitutes deliberate indifference to his serious medical need in violation of the Eighth Amendment. This Court concludes that Plaintiff's allegations are sufficient under *Farmer* to survive a motion to dismiss.

Plaintiff's allegation that Defendants' refusal to provide him with curative therapy for chronic Hepatitis C poses a substantial risk of causing him serious harm is sufficient to meet the first part of the *Farmer* test. Plaintiff has alleged that without access to a cure, he will continue to suffer from chronic Hepatitis C, which may lead to liver failure, liver cancer, and death. At this stage of the litigation, these allegations are sufficient to satisfy the objective requirements of *Farmer*.

Plaintiff has alleged that Defendants knowingly refuse to provide him with curative treatment for his chronic Hepatitis C. This allegation satisfies the second part of the *Farmer* test

---

[6] Because the Court dismisses Plaintiff's *Bivens* claims on qualified immunity grounds, Plaintiff's only remaining claims are against Defendants in their official capacities for injunctive and declaratory relief. Defendants do not appear to argue that this Court does not have jurisdiction over Plaintiff's claims for injunctive and declaratory relief. (Dkt. No. 39.) In any event, a suit against federal government agents acting in their official capacities is considered a suit against the United States itself. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally present only another way of pleading an action against an entity of which an officer is an agent.'"); *see* Fed. R. Civ. P. 4(i)(2) ("To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee.")

because, if proven, it could show that the Defendants were aware that their actions created the substantial risk of serious harm, namely, that Plaintiff's chronic Hepatitis C infection could lead to cirrhosis, liver failure, liver cancer, and death. Again, at this stage of the litigation, Plaintiff's complaint sets forth sufficient facts to satisfy the requirements for a showing of deliberate indifference by Defendants to survive a motion to dismiss.

In reaching the conclusion that Plaintiff has plausibly set forth a claim under the Eighth Amendment, the Court is mindful of the rapidly evolving medical and legal issues generated by the FDA's approval of a new generation of highly effective and curative DAA drugs, the recent pronouncements of professional organizations of liver specialists stating that treatment of essentially all patients with chronic Hepatitis C with DAA drugs is now the standard of care, and the endorsement of these new recommendations by the CDC. The Court is also aware of recent court decisions which have recognized the potential significance of these developments in addressing claims of state and federal inmates with chronic Hepatitis C who have been denied treatment with DAA drugs. *See Allah v. Thomas*, __ F. App'x __, 2017 WL 568313 (3rd Cir. Feb. 13, 2017) (reversing district court's dismissal of state inmate's Eighth Amendment claim for refusal to provide treatment with DAA drugs); *Postawko v. Missouri Department of Corrections*, C.A. No. 2:16-4219-NKL, 2017 WL 1968317 (W.D. Mo. May 11, 2017) (denying defendants' motion to dismiss state inmate's Eighth Amendment claim for denial of DAA drugs for chronic Hepatitis C); *Bernier v. Trump*, C.A. No. 16-828 (APM), 2017 WL 1048053 (D.D.C. Mar. 17, 2017) (denying motion to dismiss BOP inmate's Eighth Amendment claim for denial of DAA drugs); *Henderson v. Tanner*, C.A. No. 15-804-SDD-EWD, 2017 WL 1015321 (M.D. La. Mar. 15, 2017), *adopting Report and Recommendation* 2017 WL 1017927 (Feb. 16, 2017) (denying motion to dismiss state inmate's Eighth Amendment claim for refusal to treat with

DAA drugs); *Abu-Jamal v. Wetzel*, C.A. No. 3-16-2000, 2017 WL 34700 (M.D. Pa. Jan. 3, 2017) (granting preliminary injunctive relief to state prisoner with chronic Hepatitis C and directing prison officials to provide plaintiff DAA drug treatment).

## IV. Claims against Defendants Canada and Negron

The Court is informed that Defendant Lieutenant Canada, who was formerly Health Services Administrator at FCI Bennettsville, now works at the FCI in Talledega, Alabama. (Dkt. No. 31 at 3). The Court is further informed that Dr. Ivan Negron, who was formerly the Regional Medical Director for the BOP's Southeast Regional Office and reviewed requests for treatment with the new class of DAA drugs, is now retired. (*Id.*). Since the remaining claims provide only declaratory and prospective injunctive relief, Defendants Canada and Negron are no longer appropriate parties to this action and are hereby dismissed. The Court will, however, entertain a motion to add as parties the successors of these Defendants if they might play a potential role in the grant of injunctive relief.

## V. Conclusion

For the reasons set forth above, the Court grants Defendants' motion to dismiss as to Plaintiff's *Bivens* claims against Defendant Kane for lack of personal jurisdiction and against all other defendants on qualified immunity grounds.

The Court denies in part the motion to dismiss as to Plaintiff's claims for injunctive and declaratory relief. All claims against Lieutenant Canada and Dr. Ivan Negron for injunctive and declaratory relief are dismissed. Pursuant to Fed. R. Civ. P. 25(d), Attorney General Jefferson B. Sessions replaces Loretta Lynch as a party defendant. Plaintiff's claims for injunctive and declaratory relief against all remaining Defendants (Jefferson B. Sessions III; Thomas R. Kane;

Dr. Deborah G. Schult; Dr. J. Onuoha; Harris Hansen; Travis Bragg; and Helen J. Marberry) will be allowed to proceed.

Plaintiff's pending motions for default judgment (Dkt. No. 49), to strike (Dkt. No. 57), and to amend the complaint (Dkt. No. 64) are denied without prejudice. The Court will appoint counsel to represent Plaintiff by separate order.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

May 3 1, 2017
Charleston, South Carolina